UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| ERIC LORENZO MOULTRIE, | ) | Civil Action No.: 4:14-cv-0337-RMG-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| SOUTHERN HEALTH PARTNERS, | ) | |
| RN PAM ARD and DR. BUSH, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**I.    INTRODUCTION**

In this action, Plaintiff, who is proceeding pro se, alleges that Defendants were deliberately indifferent to his serious medical needs in violation of his constitutional right to be free from cruel and unusual punishment.  Presently before the Court are Plaintiff's Motion for Preliminary Injunction (Document # 27) and Defendants' Motion for Summary Judgment (Document # 47). Because he is proceeding pro se, Plaintiff was warned pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the motion for summary judgment could result in the motion being granting, resulting in dismissal of his claims.  Plaintiff has not filed a response to the motion.[1]  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC.  This Report

---

[1]Defendants' motion was filed on July 18, 2014, and Plaintiff's response was due August 25, 2014. On July 28, 2014, Plaintiff filed a "Complaint," (Document # 52), docketed as a letter, stating that he needed rulings on his pending motions before he could respond to the motion for summary judgment. The undersigned entered an Order (Document # 54) on Plaintiff's pending, non-dispositive motions on August 19, 2014. Plaintiff neither filed a response to the motion for summary judgment nor a motion for an extension of time to respond. Out of an abundance of caution, the undersigned entered an Order (Document # 60) directing Plaintiff to file a response to Defendants' motion within ten days of the date of the order and warning him that a failure to do so could result in a recommendation that the motion be granted and this case dismissed.

and Recommendation is entered for review by the district judge.

## II. MOTION FOR PRELIMINARY INJUNCTION

In this motion, Plaintiff seeks to enjoin Defendants from serving him a cold-cut diet of bologna sandwiches. Plaintiff alleges that Defendants have been deliberately indifferent to his serious medical needs because they refuse to place him on a special diet that does not include bologna because eating bologna causes him to breakout in hives and boils. Defendants are third-party medical providers at the J. Reuben Long Detention Center. Since the filing of his motion, Plaintiff has been transferred to the Evans Correctional Institution. See Notice of Change of Address (Document # 46). Claims for injunctive and declaratory relief become moot when a prisoner is no longer subjected to the condition about which he complains. Williams v. Griffin, 952 F.2d 820, 825 (4th Cir.1991); Ross v. Reed, 719 F.2d 689, 693 (4th Cir.1983). Therefore, this motion should be denied as moot.

## III. MOTION FOR SUMMARY JUDGMENT

### A. Facts

In his Amended Complaint, which he declares to be true under penalty of perjury, Plaintiff alleges that on three different occasions, after being placed in lock up[2] and fed bologna sandwiches twice a day, everyday, he broke out in boils and hives. Each time, the boils cleared up once he was released back to the general population, where he was able to eat hot meals. Plaintiff informed Nurse Ard that "he could not eat too much red meat or died [sic] red meat in color." Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs because they would not

---

[2]"Lock up" is a maximum security area of the detention center where detainees are placed for misbehavior or when they have broken detention center policies and procedures. Only handheld foods may be served in lock up because utensils are not allowed in maximum security areas. Ard Aff. ¶ 5.

remove bologna from his diet. He also alleges that, on one occasion, a boil the size of a nickle burst and Defendants treated him only by dressing the wound for ten days before they prescribed medication. Amended Complaint (Document # 56) pp. 3-7.

Nurse Ard avers that Plaintiff complained to the medical staff on several occasions that the boils he was experiencing were the result of him eating bologna sandwiches during lock up. Ard. Aff. ¶ 4. Plaintiff informed the medical staff that he was allergic to red meat and red dye. Even though he had not reported either of these allergies at intake (he had indicated only that he was allergic to tomatoes), the medical staff looked into his claim. Ard. Aff. ¶ 6 and Ex. A p. 35. The food services director at the detention center informed Ard that the bologna they used was turkey bologna that did not contain red meat or red dye. Ard. Aff. ¶ 7 and Ex. A p. 45. Ard also pulled Plaintiff's canteen list, which indicated that he had purchased several items that contained either red meat or red dye, such as hickory beef sticks, barbecue chips, red hot sausage, and fruit punch mix. Ard. Aff. ¶ 8 and Ex. A pp. 46-50.

Nurse Ard explained to Plaintiff that the bologna did not contain any red meat or red dye and, as such, there was no need for a medical restriction to his diet. He maintained that, if the medical staff obtained his records from previous incarcerations, they would reflect these allergies. Ard. Aff. ¶ 9. Upon Plaintiff's authorization, the medical staff obtained and reviewed Plaintiff's medical records from previous incarcerations, spanning from 1998 to May of 2013. Ard Aff. ¶ 9 and Ex. A p. 44. Those records also reflected only a tomato allergy. The records did indicate that Plaintiff had been treated for boils on several occasions while with SCDC, but did not indicate that they were caused by any allergy. The records show that the medical staff determined the boils were hygiene related, and Plaintiff was prescribed a special soap to use. However, the soap was discontinued when it was discovered that Plaintiff was being dishonest with the nurses in an effort to obtain more

than he was allowed. Ard Aff. ¶ 10 and Ex. B. Nurse Ard avers that the medical staff provided treatment for Plaintiff's boils each time he submitted a sick call for them, including antibiotics and Tylenol for pain. Ard Aff. ¶ 11 and Ex. A, pp. 14, 26, 33, 34

### B. Standard of Review

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. at 322. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present

evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

    C.    Discussion

        1.    42 U.S.C. § 1983

Plaintiff brings this action for deliberate indifference to his serious medical needs pursuant to 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

The individual Defendants argue that Plaintiff's § 1983 claims against them should be dismissed as a matter of law to the extent that they are sued in their official capacities. While acting in their official capacities as third-party contractors with SCDC they are not "persons" under 42 U.S.C. § 1983 and, therefore, are not subject to suit. Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Thus, Defendants Ard and Dr. Bush should be dismissed to the extent they are sued in their official capacities.

Similarly, Defendant Southern Healthcare Partners argues that it is not subject to suit under § 1983 because it is not a "person." It is well settled that only "persons" may act under color of state law, and, therefore, a defendant in a Section 1983 action must qualify as a "person." Groups of people, such as "the medical department," or, as here, Southern Healthcare Partners, are not amenable to suit under § 1983. See Harden v. Green, 27 F. App'x 173, 178 (4th Cir. 2001) (finding that the medical department of a prison is not a person pursuant to § 1983); Dalton v. South Carolina Dep't of Corr., C/A No. 8:09-260-CMC-BHH, 2009 WL 823931, at *2 (D.S.C. March 26, 2009) (dismissing the medical staff of SCDC and Prison Health Services as defendants because they were not persons). Additionally, if Plaintiff is suing Southern Healthcare Partners because it employed Nurse Ard and Dr. Bush, he still fails to state a cognizable claim because the doctrines of vicarious liability and respondeat superior are not applicable in § 1983 actions. See Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (a local government cannot be vicariously liable for its employees' actions); Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981) ("Section 1983 will not support a claim based on a respondeat superior theory of liability."); Monell v. Dept. of Social Serv., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, Southern Healthcare Partners should be dismissed from this action.

**2.     Medical Indifference**

The standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment-deliberate indifference to serious medical needs. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir.1992); Martin v. Gentile, 849 F.2d 863, 871 (4th Cir.1988) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). "The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any

serious medical needs of the detainee." Belcher v. Oliver, 898 F.2d 32, 34 (4th Cir.1990) (citing Martin v. Gentile, 849 F.2d 863, 871 (4th Cir.1988)). In order to state a claim, "[a] plaintiff must satisfy two elements ...: he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." Sires v. Berman, 834 F.2d 9, 12 (1st Cir.1987). Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle v. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); . Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir.1986).

Assuming that Plaintiff's boils rise to the level of a serious medical need, Plaintiff fails to show that Defendants were deliberately indifferent to those needs. The record reveals that Plaintiff received treatment with antibiotics and/or Tylenol when he requested medical treatment for his boils. The record also reveals that Defendants looked into Plaintiff's claim the he could not eat too much red meat or red dye and his concern that the bologna he was eating was causing his boils. Nurse Ard spoke with someone from food services to determine the contents of the bologna and requested and reviewed Plaintiff's medical records from previous incarcerations at Plaintiff's request. The review of those records failed to reveal any indication that Plaintiff's boils were caused by bologna. Defendants concluded there was no reason to order a special diet for Plaintiff, but continued to treat the boils when they appeared. Plaintiff essentially disagrees with the type of treatment Defendants decided to administer. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir.1988). Prison officials implement the type and amount of medical treatment at their discretion. See Allah v. Hayman, 442 F. App'x 632, 635 (3d Cir.2011) (holding that deliberate indifference standard "requires much more" than taking issue with

the "amount and kind of medical care" an inmate received); Johnson v. Doughty, 433 F.3d 1001, 1014 (7th Cir.2006) (finding that a prison doctor who prescribed non-surgical means of treating an inmate's hernia was not deliberately indifferent to the inmate's medical needs where the doctor formed a professional opinion, other doctors agreed, and the inmate continued to have associated abdominal pain); Faison v. Rosado, 129 F. A pp'x 490, 492 (11th Cir.2005) (noting that although a prisoner "might not agree with the method of treatment provided, matters of medical judgment do not give rise to a § 1983 claim").  Under the facts presented, Defendants' decision not to order a special diet for Plaintiff fails to rise to the level of a constitutional violation.  For this reason, summary judgment is appropriate.

    **3.**    **State Law Claims**

To the extent Plaintiff raises any state law claims, the court need not reach them.  If the district judge accepts this Report and Recommendation, the original federal jurisdiction claims will be dismissed.  Title 28 U.S.C. § 1367(c)(3) provides, in pertinent part, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction ...." The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir.1995) (holding district court did not abuse its discretion in declining to retain jurisdiction over the state law claims). See also, e.g., United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Revene v. Charles County Comm'rs, 882 F.2d 870, 875 (4th Cir.1989). Therefore, the undersigned recommends that the district judge decline to retain jurisdiction over any remaining state law claims.

## IV. CONCLUSION

For the reasons discussed above, it is recommended that Plaintiff's Motion for Preliminary Injunction (Document # 27) be denied as moot, Defendants' Motion for Summary Judgment (Document # 47) be granted as to Plaintiff's federal causes of action and that the court decline to retain jurisdiction over any remaining state law claims.

    s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

October 17, 2014
Florence, South Carolina

**The parties are directed to the important information on the following page.**